Argued February 6, affirmed February 19, 1969

VAN KLEEK, *Appellant, v.* STATE PUBLIC WELFARE COMMISSION, *Respondent.*

450 P. 2d 549

*L. M. Giovanini,* Portland, argued the cause and filed a brief for appellant.

*Kirk A. Mulder,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before PERRY, Chief Justice, and McALLISTER, GOODWIN, HOLMAN and HAMMOND, Justices.

HAMMOND, J. (Pro Tempore).

This is an appeal from a decree of the circuit court dismissing a petition to adopt a six-and-one-half-year-old boy. The matter had been appealed from the district court, sitting in probate, after a decree of that court denying the petition to adopt.

The child was born out of wedlock and was placed by his mother with the petitioner and his third wife shortly after birth. Some effort was made by the petitioner and his then wife, referred to here as Lorayne, to adopt the child soon after his placement in their home, but it appears that no formal proceedings to that end were then commenced. The petitioner, a hard-working and well-intentioned man, now 54 years of age, applied for a decree of adoption after he was divorced from Lorayne and while he remained unmarried.

The boy came under the jurisdiction of the Juvenile Court of Washington County when he was four years old following a series of events when, being cared for by Lorayne, he was left unattended in a locked car on three occasions and left in a hotel lobby on another. Lorayne was arrested four times for being intoxicated and was twice hospitalized. When Lorayne left the child in a locked car while her drinking led to her fourth arrest the police placed him in the Albertina Kerr Homes pending investigation and the juvenile court intervention followed.

The boy was returned to the home of petitioner and Lorayne in November 1965. The following April the child received serious third-degree burns to a leg while (at four and one-half years) he was attempting to fry bacon and eggs for Lorayne at two o'clock in the morning on their return home from one of her drinking bouts. The petitioner was aroused from his

sleep by the boy and after administering butter to the burns directed Lorayne to take him to the doctor later that morning. The child was hospitalized and skin grafting was needed to aid the injured limb. Following a period of difficulty with walking the boy appears to have substantially recovered from the burns.

The divorce of petitioner and Lorayne followed the last episode. During the pendency of the divorce the physical custody of the child was placed with petitioner's brother and sister-in-law, although with their help and later with the aid of petitioner's aged mother, the boy remained in the house of the petitioner until November 9, 1966, when the child was placed in a foster home at the direction of the juvenile court by an order that recites in part:

> "There is no doubt that there is deep affection exhibited by Roy Van Kleek for his step-son [sic] and concern for the boy's welfare, yet the type of care rendered has been haphazard and overly permissive in nature, at a time when the boy is in need of concentrated and specialized care if he is to enter school within approximately another year."

The child has remained in a foster home since that date. Petitioner has been permitted to visit him once each month and has contributed toward the cost of the boy's medical expenses but has otherwise not paid for his support, his explanation being, "They have never said a word to me about paying support."

■ The boy has been subjected to numerous traumatic experiences. He has a speech defect (etiology unknown) and is getting a late start in school. The welfare of the child is the prime concern of the court. *Dugger et ux v. Lauless*, 216 Or 188, 338 P2d 660 (1959); *Bolin et ux v. Moloney*, 213 Or 652, 326 P2d 1033 (1958).

■ The petitioner, now living alone in a trailer house, after successive divorces from three wives, each of whom had drinking problems, seeks to rear the boy as his son. He states he will employ a housekeeper to aid him in the child's care. The trial court concluded, "That the petitioner * * * is unable to provide the stable adoptive home needed by the child." We find no reason to disturb the decree denying the adoptive petition.

Affirmed.